# Supreme Court of Florida

_____

No. SC17-843
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**KENNETH PURDY,**
Respondent.

August 30, 2018

LAWSON, J.

We accepted review of the Fifth District Court of Appeal's decision in

*Purdy v. State*, 42 Fla. L. Weekly D272 (Fla. 5th DCA Jan. 27, 2017), to answer

the following certified question:

> WHEN A JUVENILE OFFENDER IS ENTITLED TO A
> SENTENCE REVIEW HEARING, IS THE TRIAL COURT
> REQUIRED TO REVIEW THE AGGREGATE SENTENCE THAT
> THE JUVENILE OFFENDER IS SERVING FROM THE SAME
> SENTENCING PROCEEDING IN DETERMINING WHETHER TO
> MODIFY THE OFFENDER'S SENTENCE BASED UPON
> DEMONSTRATED MATURITY AND REHABILITATION?

*Purdy v. State*, 42 Fla. L. Weekly D967, D967 (Fla. 5th DCA Apr. 28, 2017)

(certifying question).  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.  We

answer the certified question in the negative and quash the Fifth District's decision, which held that chapter 2014-220, Laws of Florida, requires modification of the overall sentence whenever a juvenile establishes rehabilitation at a statutorily required sentence review hearing.

## BACKGROUND

### I. Legal Context

In *Graham v. Florida*, 560 U.S. 48, 75 (2010), the United States Supreme Court held that the Eighth Amendment categorically forbids a sentence of life without parole for juvenile nonhomicide offenders and requires that any life sentence for a juvenile nonhomicide offender be accompanied by "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" before the end of the sentence and during the offender's natural life.

Two years later, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Supreme Court held that the Eighth Amendment prohibits the imposition of a mandatory life sentence without the possibility of parole for juvenile homicide offenders. Although the holdings of *Graham* and *Miller* are narrow and specific, the discussion in both cases broadly outlines Eighth Amendment principles requiring states to take into account, as part of the sentencing process, the immaturity of those under the age of 18—and the consequent ability of younger

offenders to reform as they mature.  *See Graham*, 560 U.S. at 68; *Miller*, 567 U.S. at 471-72.

In response, the Florida Legislature adopted chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes, to address the Eighth Amendment principles articulated in *Graham* and *Miller*.  Although the effective date of these statutes was prospective as of July 1, 2014, this Court later unanimously held that *Miller* applied retroactively, *see Falcon v. State*, 162 So. 3d 954, 962 (Fla. 2015), and that when a juvenile sentence imposed before July 1, 2014, violates *Miller*, the appropriate remedy is resentencing pursuant to chapter 2014-220.  *Horsley v. State*, 160 So. 3d 393, 405-06 (Fla. 2015); *see also Henry v. State*, 175 So. 3d 675, 680 (Fla. 2015) (unanimously holding that resentencing pursuant to chapter 2014-220 is the proper remedy for a sentence that violates *Graham*).

Significantly, in this case, the parties present and argue the certified question as one of statutory construction, which is answered by the plain language of the relevant statutes.  *See Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (1931))).

Questions of statutory interpretation are reviewed de novo. *See Borden v. East-European Ins. Co.*, 921 So. 2d 587, 591 (Fla. 2006).

## II. Relevant Statutes

Sections 775.082, 921.1401, and 921.1402, Florida Statutes (2015), now provide special sentencing rules for juveniles convicted of "certain serious felonies" identified in those statutes. Ch. 2014-220 (title); *see also* § 921.1402, Fla. Stat. (2015) ("Review of sentences for persons convicted *of specified offenses while under the age of 18 years.*") (emphasis added).[1] Those provisions, by their express terms, apply only to homicide offenses, which are defined in section 782.04, Florida Statutes (2015), and nonhomicide offenses that can be punished by life. §§ 775.082(1)(b), 775.082(3)(a)5., 775.082(3)(b)2., 775.082(3)(c)., Fla. Stat. (2015). As drafted, the special sentencing rules created by chapter 2014-220 do not apply to any other offenses. *Id.* For the "specified offenses," each subsection provides an early release mechanism, based on a finding of maturity and rehabilitation, for the sentence imposed pursuant to that subsection on the specified offense. *Id.*; *see, e.g.*, § 775.082(3)(c) (explaining that a juvenile convicted of a nonhomicide offense that is punishable by life or a term of years not exceeding

---

1. While the 2015 version of the Florida Statutes applies to the case at issue and is therefore the version cited in this opinion, the current 2018 version of the Florida Statutes is the same for sections 921.1401, 921.1402, and 775.082.

life, and who is sentenced to a term of imprisonment "of more than 20 years is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(d)").

To fully understand chapter 2014-220, it is important to first recognize that the Legislature grafted its juvenile sentencing fix into the preexisting general statute that set the penalties applicable to each felony offense, by degree—section 775.082, Florida Statutes. Immediately prior to the enactment of chapter 2014-220, section 775.082(1) provided that the only sentences available for a capital felony were death or life. § 775.082, Fla. Stat. (2013). Section 775.082(2) dealt with the death penalty. *Id.* Then, section 775.082(3) listed the penalties associated with lesser felony offenses, beginning with life felonies and ending with third-degree felonies. *Id.* For example, section 775.082(3)(c) simply provided that a person convicted of a second-degree felony could be punished "by a term of imprisonment not exceeding 15 years." *Id.*

With the enactment of chapter 2014-220, the Legislature amended section 775.082(1) to provide new sentencing options for juveniles convicted of capital offenses. For example, a new subsection (1)(b)1 now provides:

> A person who actually killed, intended to kill, or attempted to kill the victim and who is convicted under s. 782.04 [the homicide statute] of a capital felony, or an offense that was reclassified as a capital felony, which was committed before the person attained 18 years of age shall be punished by a term of imprisonment for life if, after a sentencing hearing conducted by the court in accordance with s. 921.1401, the court finds that life imprisonment is an appropriate sentence. If the court finds that life imprisonment is not an appropriate sentence, such

- 5 -

person shall be punished by a term of imprisonment of at least 40 years. A person sentenced pursuant to this subparagraph [for a capital felony] is entitled to a review of his or her sentence in accordance with s. 921.1402(2)(a).

§ 775.082(1)(b)1., Fla. Stat. (2015). Section 921.1402(2)(a) then provides in pertinent part that "[a] juvenile *sentenced under s. 775.082(1)(b)1.* [for a capital felony] is entitled to review of *his or her sentence* after 25 years." § 921.1402(2)(a), Fla. Stat. (2015) (emphasis added). The only sentence referenced as eligible for review in this subsection is the sentence "under s. 775.082(1)(b)1.," which is the sentence on the capital felony for a person who "actually killed, intended to kill, or attempted to kill the victim." § 775.082(1)(b)1., Fla. Stat. (2015). This formula continues in similar fashion for the other enumerated serious felonies: other homicide offenses and any nonhomicide offense classified as a "life felony" or as a "first-degree felony punishable by life" (commonly referenced by trial courts and in sentencing documents as an "F1-PBL"). § 921.1402(2)(b)-(d), Fla. Stat. (2015). Chapter 2014-220 did not add any special juvenile sentencing provisions for lower-level offenses. For example, section 775.082 still simply provides that a felony of the second degree is to be punished "by a term of imprisonment not exceeding 15 years." § 775.082(3)(d), Fla. Stat. (2017). And, no review mechanism is provided for first-degree felonies (except for F1-PBLs), second-degree felonies, or third-degree felonies.

- 6 -

The new juvenile sentencing provisions seem complex because the sentencing rules for life felonies and F1-PBLs are complex. Life felonies committed before October 1, 1983, are punishable "by a term of imprisonment for life or a term of at least 30 years." § 775.082(3)(a)1., Fla. Stat. (2017). Life felonies committed on or after October 1, 1983, but before July 1, 1995, are punishable "by a term of imprisonment for life or by a term of imprisonment not exceeding 40 years." § 775.082(3)(a)2., Fla. Stat. (2017). Life felonies committed on or after July 1, 1995, are generally punishable "by a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment." § 775.082(3)(a)3., Fla. Stat. (2017). However, there are additional sentencing rules for some life felonies committed after September 1, 2005, and July 1, 2008. § 775.082(3)(a)4., Fla. Stat. (2017). F1-PBLs are punishable "by imprisonment for a term of years not exceeding life imprisonment." § 775.082(3)(b)1., Fla. Stat. (2017).

The new juvenile sentencing rules for life felonies and F1-PBLs are categorized based upon whether the underlying offense is a homicide offense or nonhomicide offense and the length of sentence imposed. For example, a juvenile sentenced for a nonhomicide life felony to a term-of-years sentence of more than 20 years is entitled to review of that sentence after 20 years and, for longer sentences, is entitled to a second review 10 years after the initial review.

§§ 775.082(3)(c), 921.1402(2)(d), Fla. Stat. (2015). As seen in these examples, and in the text itself, the review provisions added by the Legislature are clearly and unequivocally linked to those offenses specified in chapter 2014-220. Although a review mechanism is provided for some term-of-years sentences, this is only because life felonies and F1-PBLs can be punished by a term-of-years sentence, and because a juvenile can now be sentenced to a term-of-years sentence for a capital offense. §§ 775.082(1)(b), 775.082(3)(a)5., 775.082(3)(b)2., 775.082(3)(c)., Fla. Stat. (2015).

### III. Procedural History of the Case

Kenneth Purdy was convicted in 1997 of first-degree murder (a capital felony), armed robbery (an F1-PBL), and armed carjacking (an F1-PBL). He was sentenced to life without parole for the murder (the only sentence available at the time) and to 112.7 months (approximately 9.4 years) for the armed robbery and armed carjacking convictions, to run concurrently with one another but consecutive to the life sentence. Purdy was 17 at the time he committed the offenses. Purdy's convictions and sentences became final in 1998.

In 2015, Purdy filed a motion pursuant to Florida Rule of Criminal Procedure 3.800, arguing that his life sentence violated *Miller*. Purdy did not seek relief on the sentences imposed consecutively to the life sentence. The trial court granted the relief requested and resentenced Purdy to 40 years for the murder

conviction pursuant to chapter 2014-220, in accordance with *Horsley*, with no change to the 112.7-month sentences. Consistent with sections 921.1402(2) and (4), Florida Statutes (2015), the trial court later conducted the required review and determined that Purdy was "rehabilitated and that it reasonably believed [Purdy] to be fit to reenter society." *Purdy*, 42 Fla. L. Weekly at D272. Based upon this determination, the judge reduced the 40-year sentence to 20 years, 6 months and 13 days—the amount of time already served on that sentence—followed by 10 years of probation. Determining that the statute did not authorize review of the other sentences, Purdy was returned to prison to begin serving the 112.7-month sentences. Because probation is tolled during incarceration, *Evans v. Singletary*, 737 So. 2d 505, 508 (Fla. 1999), Purdy will begin serving the probationary term now associated with the murder conviction after serving the 112.7-month sentences, unless further relief is granted.

On appeal, the Fifth District reversed and remanded for the trial court to conduct another review hearing, holding that a trial court is required to review a juvenile offender's aggregate sentence at a sentence review hearing in order to determine whether to modify the sentence based on maturity and rehabilitation. *Purdy*, 42 Fla. L. Weekly at D273. The textual basis for this holding is unclear. The Fifth District also certified the question as one of great public importance. *Id.* at D967.

# ANALYSIS

Because the plain language of section 921.1402, Florida Statutes, only provides for review of the sentence imposed for Purdy's murder conviction pursuant to the new provisions added by chapter 2014-220 as sections 775.082(1)(b) and 921.1402(2)—and because no other provision authorizes resentencing on consecutive sentences—the trial court was correct in determining that the statute does not provide any basis for resentencing for the 112.7-month sentences. *See Holly*, 450 So. 2d at 219. Although section 921.1402(2)(d) authorizes review of sentences for nonhomicide F1-PBLs imposed pursuant to section 775.082(3)(c), Purdy never sought relief from the sentences imposed for his armed robbery and armed carjacking convictions, the consequence being that he was not resentenced pursuant to chapter 2014-220 on those convictions. Even if Purdy had been resentenced pursuant to section 775.082(3)(c) for the additional convictions, the 112.7-month sentences would not qualify for review because the plain language of section 921.1402(2)(d) only provides for review if the juvenile is sentenced "to a term of 20 years or more under s. 775.082(3)(c) [on the nonhomicide F1-PBL]" and Purdy was sentenced to less than 10 years on each F1-PBL.

On appeal, we have been presented with arguments pointing to several gaps and anomalies in the statutory scheme enacted to address the Eighth Amendment

issues associated with juvenile sentencing. First, by limiting the review provisions to sentences imposed on crimes that carry a potential life sentence, chapter 2014-220 failed to address all potential Eighth Amendment violations. *Henry*, 175 So. 3d 679-80 (unanimously holding that stacked consecutive term-of-years sentences that in combination exceed the life expectancy of a juvenile nonhomicide offender and do not provide a review mechanism violate the Eighth Amendment).

Second, because the statute limits the review provisions and does not deal with the overall sentence, there will be other cases, like this one, where the sentencing court is required to consider whether the offender "is rehabilitated and is reasonably believed to be fit to reenter society" even though the offender will continue to be incarcerated irrespective of the outcome of the hearing. Amicus points out that the continued incarceration of an offender on offenses arising from a single criminal episode under these circumstances—long after a judicial determination that the juvenile offender is rehabilitated—may raise additional Eighth Amendment issues.[2]

Third, by limiting the review provisions to certain serious offenses, the Legislature has placed juveniles convicted of serious violent felonies in a better

_____

2. Cognizant of these issues, we observe that our decision today only addresses the statutory construction issue presented and does *not* foreclose Purdy from challenging his consecutive 112.7-month sentences in the trial court on Eighth Amendment grounds.

position than juveniles who commit less serious nonviolent offenses. For example, section 775.082(1)(b) provides that a juvenile convicted of homicide (a capital offense) but who did not "actually kill, intend to kill, or attempt to kill the victim" is entitled to review of his or her sentence—and potential release from prison— after 15 years. § 775.082(1)(b). By contrast, a juvenile convicted of one count of sale or delivery of a controlled substance within 1000 feet of a school commits a first-degree felony and can be sentenced to 30 years in prison with no review and no opportunity for early release. §§ 893.13(1)(c)1., 775.082(3)(b)1., Fla. Stat. (2015).

But the existence of these limitations in the coverage of section 921.1402 provides no basis for a judicial expansion of the statute that ignores the unambiguous statutory provisions. *See, e.g., State v. Weeks*, 202 So. 3d 1, 7 (Fla. 2016) ("[W]e are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.") (internal quotation marks omitted). We recognize that the scope of the existing statutory scheme has arisen in a context that is evolving and has to date focused more narrowly on the categorical rule announced in *Graham*, and on *Miller*, both of which found Eighth Amendment violations associated with juvenile life sentences. Given that context, and the fact that chapter 2014-220 was

enacted prior to *Henry*, it is understandable that the Legislature would have crafted a statute dealing only with offenses that carry potential life sentences.

## CONCLUSION

Because the plain language of the juvenile sentencing statutes does not provide for aggregation of sentences at judicial sentence review, we answer the certified question in the negative, quash the Fifth District's decision below, and remand for further proceedings consistent with this opinion.

It is so ordered.

CANADY, C.J., and POLSTON, J., concur.
LEWIS, J., concurs in result.
PARIENTE, J., dissents with an opinion, in which LABARGA, J., concurs.
QUINCE, J., dissents.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., dissenting.

The narrow certified question in this case is whether the trial court should have considered Purdy's *aggregate* sentence resulting from criminal acts that arose from one criminal episode that occurred at the same time on the same day. I would answer that question in the affirmative because failing to consider a juvenile defendant's aggregate prison sentence for crimes that arose from a single criminal episode when determining whether the sentence is constitutional violates the Eighth Amendment.

- 13 -

In 1997, Kenneth Purdy was sentenced to life without parole for a 1995 first-degree murder and a consecutive sentence of 9.4 years for armed robbery and armed kidnapping (concurrent with each other but not to the first-degree murder), all of which arose from the same criminal episode that occurred on the same day at the same time. At his resentencing hearing in 2015, conducted pursuant to the United States Supreme Court's opinion in *Miller v. Alabama*, 567 U.S. 460 (2012), the trial court made the constitutionally required determinations and found that Purdy was "rehabilitated" and "fit to reenter society." Yet, considering itself constrained by its interpretation of the applicable sentencing statutes, which the plurality adopts today, the trial court concluded that it did not have the authority to consider Purdy's aggregate sentence of life plus 9.4 years. In my view, that result, if compelled by the plain reading of the statute, as the plurality suggests, leads to a clear Eighth Amendment violation in Purdy's case.

The result reached by the plurality today ignores and cannot be reconciled with the United States Supreme Court's opinions in *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller* and this Court's subsequent opinions in *Henry v. State*, 175 So. 3d 675 (Fla. 2015), and *Horsley v. State*, 160 So. 3d 393, 405 (Fla. 2015). Leighdon Henry received an aggregate term-of-years' sentence of ninety-years' imprisonment but, unlike Purdy, was granted relief by this Court. *See Henry*, 175 So. 3d at 676. Henry, like Purdy, was seventeen at the time of his crimes and was

convicted of a number of crimes, including two counts of robbery and one count of kidnapping. *Id.* In granting Henry resentencing, this Court held that "the Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating this special class of offenders for demonstrable maturity and reform in the future because any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult." *Id.* at 680.

Purdy's sentence was the result of a single criminal episode, for which he has been found rehabilitated. Accordingly, I would conclude, based upon this Court's opinion in *Henry*, that sections 775.082(1)(b) and 921.1402 required the trial court to consider and modify Purdy's aggregate sentence at the resentencing hearing. §§ 775.082(1)(b), 921.1402, Fla. Stat. (2015). Because the plurality's analysis is one that the Legislature clearly did not contemplate or intend and is unconstitutional under the Eighth Amendment, I dissent.

## ANALYSIS

It is well-established that juvenile offenders have "diminished culpability" relative to adults. *Roper v. Simmons*, 543 U.S. 551, 571 (2005). As a result, the United States Supreme Court held in *Graham* that if a state sentences a juvenile to life for a nonhomicide offense, it must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75. Likewise, in *Miller*, the Supreme Court held that "the Eighth Amendment forbids a

- 15 -

sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," including those convicted of homicide offenses. 567 U.S. at 479.

It was against this backdrop that the Legislature adopted chapter 2014-220, Laws of Florida. *See* §§ 775.082, 921.1401, 921.1402, Fla. Stat. (2015); plurality op. at 3. Chapter 2014-220 provides for "sentence review proceedings to be conducted after a specified period of time by the original sentencing court for juvenile offenders convicted of *certain* offenses." Ch. 2014-220, Laws of Fla. (emphasis added); *see* § 921.1402(2), (6), Fla. Stat. (2015). "If the court determines . . . that the juvenile offender has been rehabilitated and is reasonably believed to be fit to reenter society," section 921.1402(7) provides that "the court *shall* modify the sentence and impose a term of probation of at least 5 years." *Id.* § 921.1402(7) (emphasis added). Shortly after the Legislature enacted chapter 2014-220, this Court unanimously concluded that "applying chapter 2014–220, Laws of Florida, to all juvenile offenders whose sentences are unconstitutional under *Miller* is the appropriate remedy." *Horsley*, 160 So. 3d at 405.

Consistent with the United States Supreme Court's opinions in *Graham* and *Miller* and this Court's subsequent opinions in *Henry* and *Horsley*, courts reviewing sentences under section 921.1402 must have the authority to modify a

- 16 -

juvenile's aggregate sentence, in order to preserve the statute's constitutionality.

As we have previously explained:

> This Court has an obligation to construe a statute in a way that
> preserves its constitutionality. *See State v. Harris*, 356 So. 2d 315,
> 316-17 (Fla. 1978) (construing section 812.021(3), in a constitutional
> manner where the statute was procedurally flawed); *see also Fla.
> Dep't of Children & Families v. F.L.*, 880 So. 2d 602, 609 (Fla. 2004)
> (stating that the Court has an obligation to construe a statute in a way
> that preserves its constitutionality). It is this Court's duty to "save
> Florida statutes from the constitutional dustbin whenever possible."
> *Doe v. Mortham*, 708 So. 2d 929, 934 (Fla. 1998). This Court is
> bound to "resolve all doubts as to the validity of the statute in favor of
> its constitutionality, provided the statute may be given a fair
> construction that is consistent with the federal and state constitutions
> as well as with legislative intent." *Heart of Adoptions, Inc. v. J.A.*,
> 963 So. 2d 189, 207 (Fla. 2007) (citation omitted).

*Perry v. State*, 210 So. 3d 630, 638-39 (Fla. 2016).

As a consequence of its interpretation of the statute, the plurality opinion

correctly concedes that proportionality concerns may arise, stating "by limiting the

review provisions to certain serious offenses, the Legislature has placed juveniles

convicted of serious violent felonies in a better position than juveniles who commit

less serious nonviolent offenses." Plurality op. at 11-12. However, a "sentence

lacking any legitimate penological justification is by its nature disproportionate to

the offense." *Graham*, 560 U.S. at 71. When continued incarceration advances no

penological purpose, the punishment runs afoul of the Eighth Amendment's

prohibition of cruel and unusual punishment. *See id.* at 59 ("The concept of

- 17 -

proportionality is central to the Eighth Amendment."). Indeed, this Court has

previously held that some juvenile sentences are unconstitutional for this reason:

> Our conclusion that Landrum's sentence is unconstitutional is also compelled by the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Graham v. Florida*, 560 U.S. 48, 59 (2010) (internal quotation omitted). Upholding Landrum's sentence would violate this precept, as a juvenile convicted of the lesser offense of second-degree murder would receive a harsher sentence than a juvenile convicted of first-degree murder.

*Landrum v. State*, 192 So. 3d 459, 460-61 (Fla. 2016).

Despite the undeniable proportionality concerns, the plurality declares itself

bound by the strict language of chapter 2014-220, concluding that "the existence of

these limitations," or anomalies, "in the coverage of section 921.1402 provides no

basis for a judicial expansion of the statute that ignores the unambiguous statutory

provisions." Plurality op. at 12. Of course, in reaching this conclusion, the

plurality ignores that we have stated time and again that "a sterile literal

interpretation should not be adhered to when it would lead to absurd results." *State*

*v. Hackley*, 95 So. 3d 92, 95 (Fla. 2012) (quoting *Maddox v. State*, 923 So. 2d 442,

448 (Fla. 2006)).

Contrary to the plurality's assertions, a constitutional interpretation of

sections 775.082(1)(b) and 921.1402 is possible. By interpreting section 921.1402

in a way that permits sentencing courts to review the offender's "sentence" under

subsection (7)—which includes the entire sentence for any one criminal episode,

- 18 -

not just the sentence for a particular crime within a criminal episode—this Court

can preserve the statute's constitutionality.  Moreover, this interpretation is

consistent with both this Court's and the United States Supreme Court's juvenile

sentencing jurisprudence.

In *Henry*, this Court held that *Graham* applies with equal force to aggregate

sentences that do "not afford any 'meaningful opportunity to obtain release based

on demonstrated maturity and rehabilitation.' "  *Henry*, 175 So. 3d at 679 (quoting

*Graham*, 560 U.S. at 75).  Therefore, Henry's 90-year aggregate sentence,

resulting from consecutive sentences imposed on nine separate offenses, violated

the Eighth Amendment.  *Id.* at 676, 679.  Henry's offenses, however, like Purdy's,

were not all capital, life, or first-degree felonies punishable by life.  *Id.* at 676.

Nevertheless, this Court determined that Henry's consecutive sentences for

multiple offenses were unconstitutional because the *aggregate* sentence failed to

link a meaningful opportunity for release to demonstrated maturity and

rehabilitation.  *Id.* at 679-80.  The Court's remedy would be meaningless if it did

not apply to each link in the chain creating that constitutional infirmity.

**THIS CASE**

In 1995, at the age of seventeen, Purdy committed several crimes during the

course of one criminal episode.  Consequently, Purdy's entire sentence—life in

prison without the possibility of parole plus 9.4 years—arose from the same

- 19 -

criminal episode. Thus, when the trial court deemed Purdy to be "rehabilitated" and "fit to reenter society" this determination was not the byproduct of the trial court's consideration of only the offense of first-degree murder, but rather, the trial court's consideration of all of the crimes which Purdy committed that day. Accordingly, I would conclude, as this Court has done previously, that section 775.082(1)(b) afforded the trial court the authority to review and modify Purdy's aggregate prison sentence.

## CONCLUSION

It is an anomaly that Kenneth Purdy, who has proven to the courts of this State that he has moved past his previous crimes and is ready to be a contributing member of society, must continue to be imprisoned. That anomaly is unconstitutional. I would, instead, read the applicable statutes as the Fifth District Court of Appeal did—to require the trial court to review and allow it to modify a juvenile offender's aggregate sentence for multiple convictions arising out of the same criminal episode. I would thus answer the certified question in the affirmative and approve the result reached by the Fifth District. But, since the plurality decision does not reach that result, I urge the Legislature to review the unconstitutional incongruities demonstrated by this case.

LABARGA, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

Fifth District - Case No. 5D16-370

(Orange County)

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Wesley Heidt, Bureau Chief, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, Florida,

for Petitioner

Matthew R. McLain of McLain Law, P.A., Maitland, Florida,

for Respondent

Roseanne Eckert, Florida International University College of Law, Miami, Florida, and Amy Weber, Fair Punishment Project, Chapel Hill, North Carolina,

Amici Curiae Florida Juvenile Resentencing and Review Project at the FIU College of Law and Fair Punishment Project